# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LEE HELM, ) | 1:08-CV-01648 OWW GSA HC |
| ) | |
| Petitioner, ) | FINDINGS AND RECOMMENDATION |
| ) | REGARDING PETITION FOR WRIT OF |
| v. ) | HABEAS CORPUS |
| ) | |
| PAM AHLIN, Executive Director, ) | |
| ) | |
| Respondent. ) | |

Petitioner is currently confined by the California Department of Mental Health as a sexually violent predator pursuant to Cal. Welfare and Institutions Code § 6604, also known as California's Sexually Violent Predator Act (hereinafter "SVPA"). He is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

On July 21, 2006, a jury found Petitioner to be a sexually violent predator within the meaning of the SVPA. (CT[1] 118-120, 159-160.) Accordingly, he was involuntarily committed on July 27, 2006. (CT 1-2.) Petitioner filed a notice of appeal. On March 29, 2005, the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"), in an unpublished opinion, affirmed the

---

[1] "CT" refers to the Clerk's Transcript on Appeal.

order adjudging Petitioner to be a sexually violent predator. See People v. Helm, 2007 WL 3355798 (Cal. Ct. App. 2007). On December 14, 2007, Petitioner filed a petition for review in the California Supreme Court. (LD 2.) The California Supreme Court summarily denied the petition without comment on January 16, 2008. (LD 3.)

On January 16, 2008, Petitioner filed a petition for writ of habeas corpus in the Stanislaus County Superior Court. (LD 4.) On February 14, 2008, the superior court denied the petition in a reasoned decision. (LD 5.) Petitioner then filed a habeas petition in the Fifth DCA, and the petition was summarily denied on March 6, 2008. (LD 6, 7.) He filed the identical petition again in the Fifth DCA on March 10, 2008. (LD 8.) On March 13, 2008, the petition was denied with citation to Ex Parte Lindley, 29 Cal.2d 709, 723 (1947), People v. Dyer, 45 Cal.3d 26, 53 (1988), People v. Kaurish, 52 Cal.3d 648, 689 (1990), In re Clark, 5 Cal.4th 750, 767-68 (1993), In re Harris, 5 Cal.4th 813, 828 (1993). (LD 9.) On March 24, 2008, he filed a habeas petition in the California Supreme Court. (LD 10.) The petition was summarily denied on April 30, 2008. (LD 11.)

On October 29, 2008, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition presents two grounds for relief: 1) "Judgment in the instant matter should be reversed because evidence submitted at trial was insufficient to sustain a true finding that Petitioner was a sexually violent predator"; and 2) "Trial counsel failed to afford Petitioner effective assistance and consequently due process of law, justifying granting the writ." Respondent filed an answer on February 20, 2009. Petitioner filed a traverse on April 23, 2009.

**FACTUAL BACKGROUND**

> In 1983, [Petitioner] was convicted of two counts of committing a lewd or lascivious act against a child under the age of 14 (Pen.Code, § 288, subd. (a)). In one of these cases, [Petitioner] orally copulated a neighbor boy, age eight or nine, who spent the night at [Petitioner]'s house. In the other case, [Petitioner] was masturbating in a public restroom when a boy walked in. [Petitioner] grabbed the boy, lowered the boy's pants and fondled the boy's penis.
>
> Two psychologists, Mark Schwartz, Ph.D., and Robert Owen, Ph.D., performed psychological evaluations of [Petitioner]. [Petitioner] described for Dr. Owen an incident in 1977 in which he "'undressed'" in front of an eight-or-nine-year-old boy. [Petitioner] was arrested, but no conviction resulted. [Petitioner] gave a similar account of this incident to Dr. Schwartz, adding that he "fondled the boy" and "'should have been convicted[.]'" [Petitioner] had taken the boy to his motel room, and the incident ended when police, who were looking for the boy, arrived at the room. [Petitioner] was 27 years old at the time.

[Petitioner] was imprisoned for his 1983 convictions and released from prison in 1988. Approximately one year later, he was found to be in violation of a condition of his parole that he stay away from young children. [Petitioner], in describing the underlying incident to Dr. Owen, stated that he went into a public park restroom, there was a boy inside and a woman told police [Petitioner] "'was following the kids.'"

In 2000, [Petitioner] was convicted of indecent exposure and possession of obscene material. According to a police report, [Petitioner] was in a public restroom, masturbating, when two boys walked in. [Petitioner] made eye contact with the boys, who then fled. Police arrested [Petitioner] in his home, where they found what Dr. Owen described as "child pornographic material," including "300 images from the computer involving boys, many of them nude." Police also found a magazine published by the North American Man/Boy Love Association (NAMBLA), an organization that, Dr. Owen testified, "basically says it's okay for men and boys to have romantic and sexual relationships." Dr. Owen testified that possession of NAMBLA is rare among sex offenders, and "occurs when a man is totally fixated on boys and doesn't quite get it that this is morally wrong...."

[Petitioner] told Dr. Owen that while in prison, he ([Petitioner]) masturbated while fantasizing about boys.

Dr. Owen diagnosed [Petitioner] as suffering from a "mental disorder," viz., "pedophilia [w]ith a sexual attraction to males." In assessing the risk that [Petitioner] would commit sexual offenses in the future, Dr. Owen looked to both static factors that do not change over time, such as past offenses, and dynamic factors, i.e., situations that a person has the ability to change, such as making a choice to obtain treatment. Dr. Owen utilized an actuarial instrument-the Static 99-to rate [Petitioner]'s risk of committing sexual offenses in the future, based on the presence or absence of certain static or historic risk factors that were found to be statistically correlated, in a sample population of offenders, with subsequent reconvictions of sexual offenses. A score is assigned to offenders based on these factors. Static factors which indicate an increased risk of reoffending include prior sex offenses and choosing strangers as victims. [Petitioner]'s score was eight, which, Dr. Owen testified, "[p]laces [Petitioner] within the high-risk category." Dr. Owen concluded, "'The results from the Static 99 indicate an elevated risk of sexually reoffending, and other static and dynamic risk factors are hardly reassuring. Given his ongoing pedophilia and his ongoing deviant fantasies, [Petitioner] poses a substantial and well-founded risk for sexual recidivism.'"

[Petitioner] was 56 years old at the time of trial, and Dr. Owen testified that "[a]s men age, though, their risk of reoffending goes down." However, Dr. Owen testified further, "if a man has a lot of sexual deviance and had prior sexual offenses, arrests, convictions for prior sex offenses, then this age factor really doesn't apply, because that sexual deviance tends to overwhelm any kind of control you might get with age. That's exactly what we have here."

[Petitioner] indicated to Dr. Owen that there was a difference between "'hands-on'" offenses-acts of sexual molestation, such as the acts underlying his two 1983 convictions-and "non-hands-on" offenses, such as public masturbation. [Petitioner] felt that the fact that he had committed no hands-on offenses since 1983 indicated his ability to exercise self-control over his deviant sexual urges. However, Dr. Owen opined, [Petitioner] "fails to see that there is a very fine line with masturbating in a restroom with kids walking in and losing a little bit of self-control, as he has in the past, and maybe touching the kid …. [W]ith the NAMBLA [magazine] at home and the downloaded images and the masturbating thinking about boys and masturbating in the restroom, I think he was doing everything possible to trigger another hands-on offense."

Dr. Schwartz also diagnosed [Petitioner] as suffering from the "mental disorder" of "pedophile." Dr. Schwartz also utilized the Static 99 and assigned to [Petitioner] a score of

eight. This score indicates [Petitioner] has "high risk" of reoffending. Data indicates that 52 percent of men with this score are convicted of a hands-on sexual offense within 15 years.

Dr. Schwartz characterized the 2000 indecent exposure incident as "basically a replay" of [Petitioner]'s 1983 act of sexual molestation. Dr Schwartz opined that if the boys who observed [Petitioner] masturbating in the 2000 incident "had been more receptive," that incident would have escalated to an act of sexual molestation.

Dr. Schwartz also opined as follows: [Petitioner]'s conduct after being "censured"-his acts of sexual molestation after being charged with a sex crime in 1977, and the commission of the 2000 offenses after serving time in prison for sex crimes-indicates that his ability to exercise control over urges to have sexual contact with children is impaired; because [Petitioner] "chose not to engage in treatment" when he was not in prison, even though he was gathering pornographic images on the internet and was aware that he had the urges to have sexual contact with boys, it was unlikely he would engage in treatment if not confined; and if [Petitioner] is not confined, "there's a serious and well-founded risk [he would] commit future sexual offenses."

[Petitioner] testified to the following. He is a pedophile, based on his history, but he is no longer a "child molester." He last molested a child 24 years ago, and although he still has a "certain amount of sex drive," that drive is "not near as strong as [it] used to be." He was never a member of NAMBLA; he "agree[d]" with "[s]ome things they have to say but not everything." Because he had not committed an act of molestation for so long, he felt he was "under control," but if he "felt [he] was on the verge of molesting again," he would "certainly" seek counseling.

See People v. Helm, 2007 WL 3355798, at *1-3 (Cal. Ct. App. 2007).

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the involuntary civil commitment challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting,* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)

(holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 71 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 71; see Williams v. Taylor, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting,* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting,* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting,* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002).

**III. Review of Petition**

A. Ground One

In his first claim for relief, Petitioner alleges there was insufficient evidence to sustain a true finding that Petitioner was a sexually violent predator.

*1. Review by State Courts*

The claim was presented on direct appeal to the Fifth DCA. On November 13, 2007, the Fifth DCA denied the claim in a reasoned opinion. People v. Helm, 2007 WL 3355798, at *3-5. Petitioner then pursued his claim in a petition for review in the California Supreme Court. (LD 2.) The petition was denied on January 16, 2008. (LD 3.) The California Supreme Court is presumed to have denied the claims presented for the same reasons stated in the opinion of the Fifth DCA. Ylst

v. Nunnemaker, 501 U.S. 797, 803 (1991).

The appellate court analyzed and rejected the claim as follows:

"'The SVPA, enacted in 1996 [citation] and thereafter amended, permits the involuntary civil commitment or recommitment, for two-year terms of confinement and treatment, of persons who are found ... beyond a reasonable doubt [citation], to be "sexually violent predator[s]' [citation].'" (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352 (*Sumahit*).) In order to establish that [Petitioner] is an SVP, the People had to prove that: "(1) [Petitioner] was convicted of two separate sexually violent offenses; (2) he had a diagnosable mental disorder that made him a danger to the health or safety [of] others; (3) his disorder makes it likely he will engage in sexually violent criminal conduct if released; and (4) his sexually violent criminal conduct will be predatory in nature." *People v. Fulcher* (2006) 136 Cal.App.4th 41, 52, italics omitted.)

[Petitioner] challenges the sufficiency of the evidence as to the third of these elements. Specifically, he argues, "Because [his] last ... act of [sexual] molestation occurred over 20 years ago, the prosecution evidence was insufficient as a matter of law to prove that [Petitioner] was a sexually violent predator who was likely to commit sexually violent offenses if released from custody." We disagree.

When a defendant challenges the sufficiency of the evidence to support a finding that he is an SVP, a reviewing court "'must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. [Citation.] To be substantial, the evidence must be "'of ponderable legal significance[,] ... reasonable in nature, credible and of solid value."' [Citation.]'[Citation.] 'In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.' [Citation.]" (*Sumahit, supra,* 128 Cal.App.4th at p. 352.) The testimony of a single expert witness that an individual has a diagnosed mental disorder that presents a serious and well-founded risk that the individual will engage in sexually violent predatory criminal behavior if free in the community can constitute sufficient evidence on that issue. (*People v. Scott* (2002) 100 Cal.App.4th 1060, 1064.)

Our Supreme Court has held that the term "likely," for purposes of determining whether it is likely a defendant will commit sexual offenses engage "connotes much more than the mere *possibility* that the person will reoffend as a result of a predisposing mental disorder that seriously impairs volitional control." (*People v. Superior Court (Ghilotti )* (2002) 27 Cal.4th 888, 916, 922. "[It is not required that there be] a precise determination that the chance of reoffense is *better than even.* Instead, an evaluator applying this standard must conclude that the person is 'likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a *substantial danger,* that is, a *serious and well-founded risk,* that he or she will commit such crimes if free in the community." (*Ibid.*)

The fact that [Petitioner] has not been convicted of an act of sexual molestation in over 20 years does not preclude a finding that he is an SVP. On this point, we find *Sumahit* instructive. There, the defendant argued that "because there was no evidence he had 'current manifestations' associated with sexual deviancy such as fantasies, antisocial outbursts or sexually violent behavior, the expert opinions relied upon by the trial court were unsupportable as a matter of law." *(Sumahit, supra,* 128 Cal.App.4th at p. 353.)

In rejecting this argument, the appellate court stated: "[D]efendant errs in supposing that he must presently engage in overt manifestations of a sexually violent predator in order

to support an opinion that he still suffers from a mental disorder affecting his ability to control his impulses. The fact that defendant has not misbehaved in a strictly controlled hospital environment does not prove he no longer suffers from a mental disorder that poses a danger to others. Defendant has an abnormal attraction to female children. Because he currently lacks access to children, his lack of outward signs of sexual deviance is not dispositive of whether he is likely to reoffend if released into society at large. Such an assessment must include consideration of his past behavior, his attitude toward treatment and other risk factors applicable to the facts of his case." (*Sumahit, supra,* 128 Cal.App.4th at p. 353.)

The defendant's sufficiency-of-the-evidence challenge in *Sumahit* was directed at the mental disorder element of the SVP definition, but the court's reasoning is applicable here. The absence of evidence of hands-on sexual offenses which postdate [Petitioner]'s 1983 convictions is not dispositive. As did the court in *Sumahit,* we must examine the entire record for other factors bearing on the element in question, viz. likelihood that [Petitioner] would reoffend. And here, the record reveals evidence of the following: possession of NAMBLA reading material is indicative of sexual fixation on young boys and impaired understanding of the immorality of sexual molestation of children; possession of that material considered in conjunction with possession of pornography, [Petitioner]'s ongoing pedophilia and his ongoing practice of masturbating while fantasizing about sex with boys suggested [Petitioner], in committing the 2000 "non-hands-on" offense, "was doing everything he possibly could to trigger another hands-on offense"; [Petitioner]'s post "censure" conduct indicates volitional impairment; [Petitioner] is unlikely to undergo treatment for his pedophilia; [Petitioner]'s score on the Static 99 placed him in category of men who are at high risk to reoffend; and both psychologists, who evaluated [Petitioner], opined that he presented a serious and well-founded risk of reoffending.

The foregoing constitutes substantial evidence that notwithstanding that [Petitioner] has suffered no convictions of hands-on sexual offenses since his 1983 convictions, there is a serious and well-founded risk that [Petitioner], because of a current mental disorder, which makes it difficult or impossible to restrain violent sexual behavior, is likely commit sexually violent predatory offenses if not confined. Accordingly, [Petitioner]'s claim fails. [footnote omitted.]

Helm, 2007 WL 3355798, at *3-5.

*2. Applicable Federal Law*

Pursuant to the Supreme Court's holding in Jackson, the test in determining whether a factual finding is fairly supported by the record is as follows:

"[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

Sufficiency claims are judged by the elements defined by state law. Id. at 324 n. 16. This Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d

520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981).

*3. Review of Claim*

In reviewing this claim, the state appellate court first noted the elements that must be found in order to establish that Petitioner is a sexually violent predator. Those elements were "that: '(1) [Petitioner] was convicted of two separate sexually violent offenses; (2) he had a diagnosable mental disorder that made him a danger to the health or safety [of] others; (3) his disorder makes it likely he will engage in sexually violent criminal conduct if released; and (4) his sexually violent criminal conduct will be predatory in nature.'" Helm, 2007 WL 3355798, at *3, *citing*, People v. Fulcher, 136 Cal.App.4th 41, 52 (2006). The appellate court noted that Petitioner challenged the finding as to the third element, claiming the evidence was insufficient to establish that his disorder makes it more likely than not that he will engage in sexually violent criminal conduct should he be released.

The appellate court then reviewed the entire record in the light most favorable to the prosecution. The court first noted the fact that Petitioner had not been convicted of sexual molestation in 20 years did not preclude a finding that he is a sexually violent predator. The court noted that there was substantial evidence which demonstrate there is a serious and well-founded risk that Petitioner is likely to commit sexually violent offenses if released. That evidence included the following:

> possession of NAMBLA reading material is indicative of sexual fixation on young boys and impaired understanding of the immorality of sexual molestation of children; possession of that material considered in conjunction with possession of pornography, [Petitioner]'s ongoing pedophilia and his ongoing practice of masturbating while fantasizing about sex with boys suggested [Petitioner], in committing the 2000 "non-hands-on" offense, "was doing everything he possibly could to trigger another hands-on offense"; [Petitioner]'s post "censure" conduct indicates volitional impairment; [Petitioner] is unlikely to undergo treatment for his pedophilia; [Petitioner]'s score on the Static 99 placed him in category of men who are at high risk to reoffend; and both psychologists, who evaluated [Petitioner], opined that he presented a serious and well-founded risk of reoffending.

Helm, 2007 WL 3355798, at *4.

Accordingly, the appellate court's decision was neither contrary to, nor an unreasonable

application of, the Jackson standard. 28 U.S.C. § 2254(d)(1). The claim should be denied.

B. Ground Two

In his other claim for relief, Petitioner contends his trial counsel was ineffective in failing to call an expert witness for his defense.

*1. Review by State Courts*

The claim was presented in a petition for writ of habeas corpus to the Stanislaus County Superior Court. On February 14, 2008, the superior court denied the claim in a reasoned opinion. (LD 5.) Petitioner then raised his claim in petitions to the Fifth DCA and California Supreme Court. Those petitions were denied without comment. (LD 7, 9, 11.) The California Supreme Court is presumed to have denied the claims presented for the same reasons stated by the Stanislaus County Superior Court. Ylst, 501 U.S. at 803.

The superior court reviewed the claim as follows:

> Petitioner's writ alleges ineffective assistance of counsel alleging trial counsel did not call Dr. Jay Adams as an expert witness. . . . In order to prevail on a claim of ineffective assistance of counsel the petitioner must show trial counsel's performance falls below an objective standard of care in presentation of the case and a reasonable probability that, but for the alleged incompetence, a different result would have occurred. Petitioner's claim fails on both counts: trial counsel has the obligation to determine if a witness is to be called; in this case it is clear that the expert witness would not add anything supportive of petitioner's position. The court finds trial counsel made a proper decision in not calling the expert, because as the expert advised the attorney, his testimony would be harmful. Further, the court finds even if the expert would have testified a different result would not be reasonably obtained. The court had the opportunity to hear the entire testimony of the petitioner and it was clear to the court, and apparently to the trier of the fact, that petitioner meets the criteria of an SVP released from prison. The tenor of his testimony was that he was not an SVP and, if counseling was needed, it would be he who would determine if it was necessary. The declaration of the expert does not persuade the court that trial counsel was incompetent or that there is any reasonable possibility a different result would have occurred.

(LD 5.)

*2. Applicable Federal Law*

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must

show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [United States Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at

413. The habeas corpus applicant bears the burden to show that the state court applied United States Supreme Court precedent in an objectively unreasonable manner. Price v. Vincent, 538 U.S. 634, 640 (2003).

In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel).

### *3. Review of Claim*

Upon reviewing the record and the affidavit of the expert witness, this court cannot conclude that the state court determination of the claim was objectively unreasonable. Petitioner first alleges that counsel failed to subpoena the witness, and because of this the witness left on vacation during the trial. Nevertheless, defense counsel contacted the expert witness during trial and summarized Petitioner's testimony. Despite being on vacation, the expert never stated that he could not appear at trial. In any case, the expert informed counsel his testimony would not be helpful; therefore, it was determined the expert would not testify. For these reasons, Petitioner fails to demonstrate the state court finding that counsel was not deficient to be objectively unreasonable.

Moreover, Petitioner fails to demonstrate any prejudice resulting from counsel's failure to call the witness. First, Petitioner testified that he did not believe he needed counseling. He stated he did not want counseling because he felt his disorder was under control. Thus, the expert's testimony that Petitioner would be amenable to counseling upon release would have been undermined. In addition, there is no reasonable probability the result would have been different had the expert testified because of the overwhelming evidence that Petitioner remained at risk of committing a sexually violent predatory act if released. Petitioner admitted to an incident in 1977 when he had undressed in front of a boy and fondled him. In 1983, Petitioner was found guilty of two counts of

lewd and lascivious conduct with a child under age 14. In one count, Petitioner had orally copulated a neighbor boy who was of age 8 or 9. In the other count, he had masturbated in a public restroom when a boy walked in. Petitioner grabbed the boy, lowered his pants and fondled his penis. One year after being released on parole for his 1983 conviction, he violated a parole condition that he stay away from young children. Specifically, he went into a public restroom and a woman complained to police that he was following children. In 2000, he was convicted of indecent exposure for masturbating in a public restroom in front of two boys. When he was arrested, he was found in possession of NAMBLA reading material and pornography including 300 computer images of nude boys. He admitted and was diagnosed with the mental disorder of pedophilia with a sexual attraction to males. He admitted an ongoing practice of masturbating while fantasizing about sex with boys. Two reviewing psychologists who had evaluated Petitioner opined that he presented a serious and well-founded risk of reoffending. The Static-99 test was administered and Petitioner tested within the "high-risk category" for sexually reoffending. The psychologists further found that Petitioner's ability to exercise control over his sexual urges toward children was impaired. Given this evidence, there is simply no chance that, had the expert testified that Petitioner was amenable to treatment if released, the result would have been different. Accordingly, the state court rejection of the claim was not an unreasonable application of the Strickland standard. 28 U.S.C. § 2254(d)(1). The claim should be rejected.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.

The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **May 15, 2009**  **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE